UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD KEARNEY, #03-A-4948,

                          Plaintiff

                                             DECISION AND ORDER

-vs-

                                             10-CV-6202 CJS

N.Y.S. DOCS, COMMISSIONER BRIAN
FISCHER, JOSEPH F. HALUSKA,
SUPERINTENDENT NAPOLI and
M. BRIDGE,

                          Defendants
_____

      Richard Kearney ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges that Defendants violated his federal constitutional rights, in violation of 42 U.S.C. § 1983, and his rights under the Americans with Disabilities Act ("ADA"). Now before the Court is Defendant's motion for summary judgment (Docket No. [#27]). The application is denied.

## BACKGROUND

      The following are the facts of the case viewed in the light most-favorable to Plaintiff, the non-moving party. At all relevant times, Plaintiff was a prisoner in the custody of DOCCS. Plaintiff has degenerative joint disease in both knees. Prior to the events at issue in this case, a DOCCS physician determined that Plaintiff needed a metal knee/leg brace to walk, and Plaintiff's ambulatory health record ("AHR") reflects that diagnosis. Prior to June 2007, DOCCS officials at various correctional facilities permitted Plaintiff to have such a brace. In or about June 2007, Plaintiff was

1

transferred to Southport Correctional Facility ("Southport") to serve a disciplinary sentence in the Special Housing Unit ("SHU"). Upon his arrival at Southport, the facility Medical Director, defendant Joseph Haluska, M.D., confiscated Plaintiff's knee brace. The AHR indicates that the brace was taken because it contained metal, and that the treatment plan was to provide Plaintiff with a plastic brace. Plaintiff asked to have the metal brace returned, and in the alternative, asked to have the use of crutches or a wheelchair for ambulating outside of his cell. All of those requests were denied. Plaintiff was not provided a plastic brace or any type of device to replace the knee brace. Consequently, Plaintiff experienced significant pain when walking or standing, especially when walking for any distance outside of his cell. Plaintiff was ordered to walk outside of his cell several times, and experienced pain. After that, Plaintiff refused to leave his cell, and therefore did not participate in activities and privileges including recreation, showers, medical and dental treatment and haircuts. Consequently, Plaintiff was issued misbehavior reports for refusing to leave his cell. On April 8, 2010, Plaintiff commenced this action. The Complaint alleges an Eighth Amendment medical deliberate indifference claim.[1] In conducting its initial review of the Complaint pursuant to 42 U.S.C. §§ 1915(e) and 1915A, the Court also found that the Complaint stated

---

[1] The Complaint alludes to the reason why Plaintiff was sent to Southport, which is that while at Auburn Correctional Facility ("Auburn"), he refused an order to occupy a double-bunk cell, because he believed that he had a medical exemption from double bunking. The Complaint suggests that the misbehavior report was unwarranted and that Plaintiff's due process rights were violated at the ensuing disciplinary hearing. The Court views those allegations as background information. The Complaint does not appear to state a plausible separate due process claim against anyone at Auburn, and DOCCS cannot be liable under a theory of respondeat superior.

a claim under the ADA, Title II. *See*, Order (Docket No. [#8]).[2]

On August 27, 2010, Plaintiff filed a request [#l0] for Clerk's Entry of Default, however, the Clerk of the Court denied the request because Plaintiff failed to submit proofs of service. Nevertheless, on September 1, 2010, Plaintiff filed a Motion for Default Judgment [#11]. Again, though, the application did not establish that Defendants had been actually served with Process. On January 28, 2011, Plaintiff filed another application for Default Judgment [#18] against Defendants Haluska, Napoli and Bridge, "in their individual capacit[ies] only." Plaintiff alleged that those Defendants had not filed Answers "in their individual capacities." *See, id*. at p. 2 ("Still as of the present date the Defendants mentioned within the foregoing fo this motion has failed to respond."). Actually, though, Haluska, Napoli and Bridge had filed Answers [#13] more than two months earlier, on November 3, 2010.

During pretrial discovery, Defendants filed Plaintiff's AHR [#21] under seal. The AHR entries confirm that Plaintiff's leg brace was confiscated when he arrived at Southport, and that he requested to have the brace returned. The AHR also indicates that the medical staff at Southport offered Plaintiff an elastic "sleeve"-type brace for his knee, to replace the metal brace, but that he rejected the elastic brace. However, at his deposition, Plaintiff denied that such AHR entry was accurate, and more specifically, he insisted that he was ever given any type of alternate brace or treatment

---

[2]"To state a claim under Title II, which applies to inmates in state prisons, *see United States v. Georgia*, 546 U.S. 151, 153, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006), a prisoner must show: (1) "he is a 'qualified individual' with a disability"; (2) "he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity"; and (3) "such exclusion or discrimination was due to his disability." *Phelan v. Thomas*, 439 F. App'x 48, 50 (2d Cir.2011) (*citing Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2d Cir.2003)); see 42 U.S.C. § 12132." *Edwards v. Horn*, No. 10 Civ. 6194(RJS)(JLC), 2012 WL 760172 at *21 (S.D.N.Y. Mar. 8, 2012).

for his knee. *See*, Pl. Dep. at pp. 14, 18, 22, 24, 37-38, 44-45.

On September 20, 2011, Defendants filed the subject motion for summary judgment [#27], including the required *Irby* Notice. Defendants did not submit any affidavits in support of the motion. Instead, Defendants rely on Plaintiff's deposition transcript, the AHR, and copies of grievances that Plaintiff filed. Defendants' memorandum of law maintains that Plaintiff cannot demonstrate an Eighth Amendment claim or an ADA claim. Defendants rely largely on *Tannenbaum v. Arizona*, 2008 WL 2789589 at *9 (D. Arizona 2008) ("*Tannenbaum*") for the proposition that prison officials are entitled to confiscate metal knee braces that pose a security risk, and that such action does not violate prisoners' Eighth Amendment rights where the officials replace the metal braces with non-metal braces. *See, id*. ("[M]any courts have recognized the inherent security threat in metal knee braces and have consistently upheld prison officials' decisions to confiscate them and provide inmates with alternative knee braces that do not contain metal."). Defendants further contend that Plaintiff's knee injury does not qualify as a "disability" under the ADA. The individual Defendants (Haluska, Napoli and Bridge) also argue that Plaintiff cannot maintain an ADA claim against them in their individual capacities, and that the same claims against them in their official capacities should be dismissed "because they are redundant of the claims against the government entity." Defs. Memo of Law [#27-1] at p. 5. Plaintiff opposes the application. *See*, Docket No. [#29].

DISCUSSION

*Rule 56*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).

The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

*Eighth Amendment Medical Claim*

Plaintiff alleges that Defendants violated his Eighth Amendment rights in connection with his medical care, and the legal standard for such claims is clear:

5

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir.2003) (citations and internal quotations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id.* (citation omitted).

6

In this case, Defendants maintain that they are entitled to summary judgment on the Eighth Amendment claim, since the metal knee brace presented a security threat, and since Plaintiff was offered an alternative non-metallic knee brace. However, Plaintiff clearly disputes that he was ever offered a substitute brace or any other type of treatment or assistance for his knee condition. Accordingly, there is a triable issue of fact on that point. Defendants have not argued that they would still be entitled to summary judgment if Plaintiff's version of facts were proven, that is, if after his brace was confiscated, they failed to provide him with any type of treatment, which resulted in him being unable to walk and leave his cell for months, even to take showers and obtain medical and dental treatment. Accordingly, Defendants' motion is denied as to the Eighth Amendment medical claim.

*The ADA Claim*

As mentioned earlier, Plaintiff did not expressly plead an ADA claim in his Complaint. Instead, the Court construed the Complaint as stating such a claim, since Plaintiff claimed that as a result of his inability to walk, he could not leave his cell, and therefore was unable to access services, programs and activities, such as showers, dental care and recreation. At such time, the Court stated that "the [ADA] claim may proceed at this stage *against the public entity*." Order [#8] at p. 2 (emphasis added). In that regard, the Court was indicating that the ADA claim could proceed against DOCCS, not against the individual Defendants in their individual or official capacities. *See, Browdy v. Karpe*, 131 Fed.Appx. 751, 753-754 (2d Cir. May 16, 2005) ("Title II of that statute [ADA] does not provide for individual capacity suits against state

7

officials.") (citation omitted); *Loadholt v. DOCS*, No. 09–CV–553Sc, 2009 WL 4230132 at *3 (W.D.N.Y. Nov. 24, 2009) ("The Second Circuit has recognized that a valid ADA claim may be stated against a state official in his official capacity. . . . However, where a plaintiff has sued the state or a state entity under the ADA, and an official capacity claim against an individual defendant would be redundant, courts in this Circuit have dismissed ADA claims against individual defendants in their official capacities.") (citations omitted). With that clarification, the individual Defendants' motion is denied as unnecessary insofar as it is directed at the ADA claim, since that claim is not asserted against them.

The remaining issue is whether DOCCS is entitled to summary judgment on the ADA claim.[3] DOCCS first argues that Plaintiff's knee condition does not qualify as a disability under the ADA. Although walking is a "major life activity" under the ADA, the mere limitation of one's ability to walk will not qualify as a disability under the ADA. *See, e.g., Sussle v. Sirina Protection Systems Corp.*, 269 F.Supp.2d 285, 312 (S.D.N.Y. 2003) ("The inability to walk long distances or to climb stairs does not in itself substantially limit an individual's ability to perform a major life activity.") (internal quotation marks omitted; collecting cases). A complete inability to walk, though, or a sufficiently severe limitation on the ability to walk, can qualify as a disability under the ADA. *See, Epstein v. Kalvin-Miller Intern., Inc.*, 100 F.Supp.2d 222, 226 (S.D.N.Y. 2000) ("[T]o succeed on his ADA claim, plaintiff must prove that his diabetes or his

---

[3]In this Circuit, Eleventh Amendment sovereign immunity bars actions against states under Title II of the ADA, unless the plaintiff can demonstrate that the Government's action was "motivated by either discriminatory animus or ill will due to disability." *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 111-112 (2d Cir. 2001). Defendants did not move for summary judgment on the basis of sovereign immunity.

heart disease impairs his ability to walk to such a great extent that he is "unable" to walk, or is "significantly restricted" in his ability to walk, as compared with the average person."). Viewing the instant record in the light most-favorable to Plaintiff, his knee condition was permanent, extremely painful and prevented him from walking at all. Accordingly, there is an issue of fact on this point that precludes summary judgment.

CONCLUSION

Defendants' summary judgment motion [#27] is denied. Plaintiff's applications for Default Judgment [#11] [#18] are also denied, since he did not demonstrate his entitlement to such relief. *See, Perkins v. Napoli*, No. 08-CV-6248 CJS, 2010 WL 455475 at *1 (W.D.N.Y. Feb. 4, 2010) ("[E]ntry of a party's default pursuant to Fed.R.Civ.P. 55(a) is a mandatory prerequisite for entry of a default judgment pursuant to Fed.R.Civ.P. 55(b).") (citation omitted).


Dated:  Rochester, New York
        October 19, 2012
                            ENTER:


                            /s/ Charles J. Siragusa
                            CHARLES J. SIRAGUSA
                            United States District Judge